**HENDERSON et al. v. WATSON.**

Court of Appeals of Kentucky.

June 19, 1953.

As Modified on Denial of Rehearing

Dec. 11, 1953.

H. R. Wilhoit, Grayson, Joe R. Massey, Jr., Ashland, for appellants.

Dysard & Dysard and Leonard C. Fielder, Ashland, for appellee.

STEWART, Justice.

This action was instituted by Thomas D. Watson, plaintiff below, to recover for injuries to his person and to his automobile suffered in a collision with an ambulance alleged to have been negligently driven by Jack Henderson and owned by Leslie Henderson, defendants below. We shall herein refer to the parties as plaintiff and defendants, respectively. The Hendersons each filed counterclaims, the former seeking $11,463 damages as a result of his injuries, the latter attempting to recover $3,480 as expenses incurred in replacing his ambulance. The jury returned a verdict in favor of Watson, allowing him $340 for the damage to his automobile, a 1936 model Chevrolet.

The accident out of which this litigation arose occurred on December 28, 1950, in Ashland. Immediately before the collision the ambulance, with Jack Henderson at

the wheel, was proceeding east at a high rate of speed on Winchester Avenue, a main traffic artery through Ashland. According to the evidence, and plaintiff does not dispute this, the ambulance patient was an emergency case who was being rushed under doctor's orders to a hospital in Huntington, West Virginia. As the vehicles approached each other at the crossing of Winchester Avenue and 29th Street, admittedly an intersection in the heart of the business portion of the city, plaintiff, headed south on 29th Street, proceeded to drive across Winchester Avenue at a speed estimated at no more than ten miles per hour. The driver of the ambulance, who was entering the intersection on Winchester Avenue simultaneously, veered his vehicle sharply to his right, but was unable to avoid the impact, and the left front wheel of his vehicle struck the front of plaintiff's automobile. After the machines ran together the ambulance traveled some distance farther and ran into two parked cars, knocking one of them up on the sidewalk. Both plaintiff and defendant, Jack Henderson, suffered injuries that required hospitalization.

At the close of all the evidence defendants moved for a directed verdict, which motion the court overruled, defendants excepting. The case was then submitted to the jury with the result we have mentioned heretofore.

Defendants have appealed and their primary contention is that plaintiff was negligent as a matter of law, and that his negligence was the sole and proximate cause of the accident, and, next, that defendant, Jack Henderson, was entirely free of any actionable negligence in connection with the collision. Each of these assertions stems from defendants' theory as to what plaintiff's duties were and what defendants' rights consisted of under two statutory provisions that relate to the operation of an authorized emergency vehicle when, as here, it was on an errand of mercy.

KRS 189.011(a) reads thus, in part: "'Authorized emergency vehicles' shall mean * * * an ambulance * * * when operated in connection with an emergency." KRS 189.390(6) exempts an authorized emergency vehicle when responding to an emergency call from the speed limitations applicable to an ordinary motor vehicle when the driver thereof sounds an audible signal and when the vehicle is equipped with and flashes a red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle; and this same subsection concludes with these words: "This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

Plaintiff testified that as he approached Winchester Avenue he noticed the electrically controlled traffic light was red. A bus passed traveling west on the avenue as he drew still nearer. As he progressed up the block the light turned green about the moment he reached the intersection and he proceeded on. A line of cars was parked along the north curb of Winchester Avenue, or to his right, and a few doors to the west on the same thoroughfare a trailer-truck was double parked in front of Schenker's Market. He said the cars along the curb, the passing bus and the parked trailer-truck blocked his view toward the west and, although he had the green light with him, this caused him to continue slowly toward the center of the intersection. It was at this point he suddenly became aware of the ambulance. But by then it was practically upon him and he was unable to stop in time to avoid the collision. He stated further that he had not heard the siren because his windows were rolled up to keep out the cold air.

Defendant, Jack Henderson, testified that the ambulance was fully equipped with two electrically operated sirens and several red warning lights which were working at the time. This latter statement was undisputed. He said that as he advanced toward 29th Street the traffic light changed from amber

to green in his favor. He observed plaintiff's car, and upon seeing it come to a halt at the crosswalk, he continued without reducing his speed. Not until too late did he realize plaintiff was not going to stop.

A host of plaintiff's witnesses, testifying as to the manner in which the siren was sounded, introduced evidence to the effect that it was only sounded when it was "way off," or "as the ambulance entered the 2800 block," or "when the ambulance was some distance away." We therefore get the impression no audible signal was being given by the ambulance as it approached the intersection. These same witnesses also gave voice to the fact that the ambulance at the moment of the collision was traveling at a very rapid rate of speed; some estimated this speed from 65 to 70 miles per hour. Also, according to them the light was in plaintiff's favor. Defendants adduced some testimony that tended to rebut this proof, although the ambulance driver admitted he was going 55 miles per hour immediately before the accident.

In the light of the above recitation of facts, we cannot but agree that the trial judge correctly refused to find plaintiff guilty of negligence as a matter of law. There is ample testimony to indicate that he cautiously felt his way along, even though the traffic light was green on his thoroughfare, and that, due to the presence of several vehicles, which blocked his view in the direction from which the ambulance was coming, he was unable to see down Winchester Avenue toward the west until he had reached a position almost beneath the traffic signal, approximately where the point of impact is located. Furthermore, plaintiff's statement that the windows on his automobile were rolled up seems plausible since it was a cold December day. Nor can we ignore the evidence of many witnesses who positively stated that the siren had not been sounded for such a distance from the intersection that a person approaching Winchester Avenue at right angles in an automobile, as plaintiff was doing, might reasonably have failed to hear it.

But it is argued that defendants were entitled to a peremptory instruction for the reason that defendant, Jack Henderson, was not guilty of any negligence under the circumstances of this case. They maintain strenuously that where an ambulance is responding to an emergency call, if the driver thereof is giving an audible signal of his approach by siren, bell or exhaust whistle and also flashing the required red light, then he may not only proceed against a red traffic semaphore but he is absolutely free to disregard any statutory speed limitations whatsoever. They insist KRS 189.390(6) supports this line of reasoning. We disagree. Not only does this subsection, as the above quotation from it discloses, clearly state that the driver of an authorized emergency vehicle must operate it "with due regard for the safety of all persons using the street" but the law of this Commonwealth has always been, and still is, that there can be no justification for negligent driving by the operator of any vehicle at any time or for a careless act by any person anywhere that imperils the life or limb of any user of a public highway. See O'Neil & Hearne v. Bray's Adm'x, 262 Ky. 377, 90 S.W.2d 353.

A review of the evidence leaves us in serious doubt as to whether the driver of the ambulance gave proper warning by sound signal up to the time he entered the intersection. According to the admission of defendant, Jack Henderson, as we have mentioned, he was operating at a speed of 55 miles per hour, and others testified he may have been making up to 70 miles per hour, and this was concededly being done over one of the main-traveled streets of Ashland and at an intersection in a crowded business section. These were factors which required the lower court to submit the question of the negligence of defendants to the jury, and we are of the opinion that the lower court ruled correctly in this respect.

But we must go one step further and hold that KRS 189.390(6) does not permit an emergency vehicle to be operated at an

excessive rate of speed with impunity. In deciding whether such a vehicle was driven with due regard for the safety of all others using the streets, it is our opinion that speed may nevertheless enter into the question of negligence. Thus, in the case at bar, even had there been no question concerning the giving or sounding of proper warning signals the speed at which the ambulance was being driven was such that the jury should properly decide whether or not it was being operated negligently. See Huddy's Cyclopedia of Automobile Law, Vols. 3-4 (9th Ed.), sec. 170, pp. 318–319, and Grammier-Dismukes Co. v. Payton, Tex. Civ.App., 22 S.W.2d 544. We do not mean to say that an ambulance may never be operated above the legal speed limits prescribed for ordinary vehicles using highways, for the statute clearly permits that. However, we do assert that under certain circumstances, such as here, where an ambulance is driven through a crowded city, a driver must necessarily exercise caution in so far as speed is concerned, in order to give due regard to the safety of others on the streets.

■ We now turn to defendants' last contention, namely, that "Instruction No. (1)" and "Instruction No. 2" were reversibly prejudicial. We quote the part of the first instruction about which he complains:

"(1) It was the duty of the defendant, Jack Henderson, before proceeding against a red or yellow traffic signal at 29th Street and Winchester Avenue to slow down the ambulance he was driving to the extent necessary for safe operation thereof; and if an audible signal by siren was given it was his duty to operate at such speed as would give due regard for the safety of persons and vehicles using the streets and as not to constitute reckless disregard of the safety of others."

It is insisted the above instruction imposed upon defendant, Jack Henderson, an absolute duty to slow down at the intersection, but a casual reading of it will reveal that the requirement to slow down at the time and place was properly qualified by the phrase, "before proceeding against a red or yellow traffic signal," and then by the words, "to the extent necessary for the safe operation" of the ambulance. The total effect of the instruction was to set forth the statutory duties imposed upon this defendant while operating the ambulance at the intersection, and we conclude the instruction was not erroneous under the evidence.

■ After specifying the duties incumbent upon this same defendant, as embraced in Instruction (1), Instruction No. 2 provided in substance that if this defendant "failed" to observe one or more of the duties defined in Instruction (1), and such proximately caused the accident, the jury should find for the plaintiff. It is claimed that the omission of the word "negligently" before "failed" amounted to a peremptory for the plaintiff when considered in connection with Instruction (1), since it is admitted the ambulance did not slow down. The record shows that the court not only submitted to the jury the statutory duties of this defendant but in another instruction correctly defined ordinary care and required the jury, in order to find against defendants, to believe that the driver of the ambulance had not only failed to exercise ordinary care but had also failed to observe one or more of the duties imposed upon him by law. Obviously such failure on the part of the driver would of itself constitute negligence. It follows that Instruction No. 2 was not prejudicial to defendants when considered with the other instructions. See Abbott Transfer Co. v. Kruse, 272 Ky. 479, 114 S.W.2d 731.

Wherefore, the judgment is affirmed.