Roscoe C. GASPARAC, Ishmael Caudill, dba Caudill Funeral Home, Appellants,

v.

James Corbitt CASTLE, Appellee.

Court of Appeals of Kentucky.

Dec. 11, 1959.

**112**

J. K. Wells, Paintsville, for appellants.

George C. Perry, III, W. B. Hazelrigg, Paintsville, Harris Howard, Prestonsburg, for appellee.

STANLEY, Commissioner.

On March 7, 1957, there was a collision at a street intersection in Paintsville between a passenger car and an ambulance going to a hospital with an emergency patient. The ambulance belonged to Ishmael Caudill, who was doing business under the name of the Caudill Funeral Home, and was driven by his employee, Roscoe Gasparac. The owner and driver of the other automobile, James Corbitt Castle, instituted this action for personal and property damages. The defendants denied negligence, pleaded contributory negligence and counterclaimed for personal and property damages. Caudill prayed judgment for $6,500 and Gasparac for $3,600. A verdict was returned for the plaintiff, Castle, for $500 for personal injury and medical expenses

and $450 for damage to his car. Judgment for $950 for the plaintiff and dismissing the counterclaims was entered. The defendants appeal. They contend judgment should have gone for them because only the appellee was negligent.

The plaintiff, Castle, was driving north on College Street and had stopped at the intersection with Third Street because of a red traffic light. When the light changed to green, he proceeded in second gear. The ambulance, which was going east, entered the intersection against the red light. The front corners of the vehicles collided about the middle of the intersection. The plaintiff testified he looked and listened but did not see the ambulance or its lights and did not hear any siren or other warning of its approach; that his car windows were closed and his vision of the cross street was somewhat obstructed by parked cars, trees, utility poles and signs. He further testified that there was nothing to prevent the ambulance driver from cutting to his left and missing his car. While the evidence of other witnesses is not very clear because they refer to buildings and places without stating the distances from the corner, we gather from their testimony that the ambulance siren was sounded about a square away but not continuously or even intermittently as the ambulance approached the intersection where the collision occurred.

On the other side, the ambulance driver testified that the siren warning was continuous and five red flasher lights (one or more on top) were operating. Castle's automobile was within the intersection when he first noticed it, and there was no room for him to swerve far enough to his left to avoid the collision. Other witnesses heard the siren and saw the ambulance approaching, but here, too, the record of distance is obscure.

There is evidence that the ambulance was going "50, 55 or 60 miles an hour," although the driver stated he was going 25 or 30 mph.

Our statutes regulating traffic define an "Authorized emergency vehicle" as including "an ambulance * * * when operated in connection with an emergency." KRS 189.011(a). Ambulances "while being operated as such shall have the right of way with due regard to the safety of the public." KRS 189.320. The statute relating to speed of motor vehicles, KRS 189.390, exempts from the application of the speed limitations an "emergency vehicle when responding to an emergency call * * * and the driver thereof sounds audible signal by bell, siren, or exhaust whistle, and when such emergency vehicle is equipped with at least one lighted lamp exhibiting red lights visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle." KRS 189.390(6). This subsection further declares, "This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

In Henderson v. Watson, Ky., 262 S.W. 2d 811, we regarded the specific provision of the exemption from the speed limit as also applicable to a crossing intersection when the traffic light is against the driver.

■ The appellants' argument that as a matter of law their ambulance had the right of way and was in a place it had the legal right to be at the time of the collision is subject to qualification. The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver, for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended. Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable with the obligation to give preference to the emergency vehicle. There must be strict observance of the conditions which will exempt an emergency vehicle. When a driver has the preferred right of way, he must be especially alert when he intends to run a red traffic light at a busy street intersection and must take care commensurate with the serious consequences that might follow his failure to do so. He should remember that other drivers have the right to assume that the red light signal will be obeyed by him unless duly and timely warned to the contrary. The evidence of negligence on the part of the ambulance driver was sufficient to take the issue to the jury.

■ The appellants press the point that the appellee, Castle, was negligent as a matter of law. Their argument is for the application of the rule that a party will be held chargeable as a matter of law with negligence where the circumstances and physical conditions were such that he cannot reasonably be heard to say he looked and did not see or listened and did not hear what was obvious. This rule is subject to qualification. It should not be applied unless another automobile or any other object involved in an accident was unquestionably visible or the danger was clearly obvious. The application should not be made where the party had the legal right to assume that the other motorist would obey the traffic laws and customs and there was no reason for him to anticipate the contrary. Farris v. Summerour, Ky., 296 S.W.2d 708; Jackson v. Shipley, Ky., 312 S.W.2d 627. The plaintiff in this action had the favorable green traffic light and had the right to assume that the red light would be obeyed unless he became aware, or, in the exercise of reasonable care, should have become aware that the ambulance driver did not intend to regard the red light. The evidence of compliance with the statutory conditions upon which a preferential right of way must be based is not so clear and strong as to overcome the

positive evidence of the appellee that though he looked, he did not see the ambulance or hear the siren as it neared the intersection and ran the red light.

The case cannot be distinguished from Henderson v. Watson, supra, Ky., 262 S.W. 2d 811, in which an automobile was struck at a busy street intersection by an ambulance on an emergency errand and there was evidence that the plaintiff was proceeding on a green light and the ambulance siren had been sounded when it was some distance away but not as it neared the intersection. The evidence was held to have presented a question for the jury as to the contributory negligence of the plaintiff. The instructions given in the present case were patterned after the instructions approved in that case. See also Fayette County v. Veach, Ky., 294 S.W.2d 541.

The judgment is affirmed.