**Raymond WILLIAMS, Appellant,**

v.

**James Carlisle CHILTON and Jack Cook, Appellees.**

Court of Appeals of Kentucky.

April 26, 1968.

G. Wayne Bridges, Bridges & Nelson, Covington, Lohren F. Martin, Jr., Sutton, Martin & Forcht, Corbin, for appellant.

Robert E. Ruberg, O'Hara, Ruberg & Cetrulo, Covington, Daniel W. Davies, Davies & Hirschfeld, Newport, for appellees.

STEINFELD, Judge.

The appellant, Raymond Williams, sued appellees, James C. Chilton, Jack Cook and Jim Cook, to recover damages for personal injuries resulting from an accident on U. S. Highway 42 in Boone County, Kentucky. On Williams' motion the court dismissed the action as to Jim Cook. At the conclusion of all the evidence each party moved for a directed verdict. The court sustained appellees' motion and entered judgment dismissing, from which Williams appeals. We reverse.

On January 1, 1964, Williams was driving a tractor-trailer truck from Louisville to Cincinnati, a run he had been making frequently for nearly 13 years. He was traveling about 30 to 35 miles per hour on U. S. 42, a two-lane highway. There was some snow and ice on the road. He said that as he came around a right-hand curve he saw a police car and a wrecker which then were sitting side by side blocking the highway. The police car, occupied only by State Police Officer Chilton, was in the driving lane headed

toward Louisville, and the wrecker, driven by Jack Cook, was in the opposite driving lane. Chilton, in the performance of his police duties, was looking for Cook in his wrecker to direct him to go to the assistance of a disabled vehicle. Cook and Chilton stated that as they approached each other Chilton signaled for Cook to slow down which he did. They claimed that they never completely stopped and that the message was conveyed as they slowly passed each other. Williams testified that no warning signals were given by either Cook or Chilton but Chilton said that the light on top of the police car was flashing while he was talking to Cook.

Williams testified that the two vehicles were about 150 feet ahead of him when they came into his view. Chilton said he saw the truck come around the bend when it was 600 to 700 feet from him. Cook and Chilton claim that photos and tape measurements made some time after the accident sustain their estimates. Chilton told the jury that these measurements showed that the distance from the curve to the place where the accident happened was 500 feet.

Williams testified, "Well, I put on my brakes as easy as I could because I knew it was slick and dangerous and I knew it was either try to get stopped or hit them one and she just slid, the trailer did, and I went over in a ditch—jack-knifed and went over in a ditch on the right hand side there against a tree." He said that he came to rest about 50 feet from where Cook and Chilton were (they say 100 to 400 feet).

Williams pleaded, "That the defendants herein were careless and negligent in the operation of their motor vehicles in that they stopped same upon a public highway and obstructed traffic and as a result of the blocking of said highway, the plaintiff was unable to pass by the said highway and was forced to leave the roadway to avoid a collision with the vehicles operated by the defendants."

Statutes on which the parties relied are the following:

KRS 189.011(1):

(a) " 'Authorized emergency vehicle' shall mean any police vehicle at all times or an ambulance and fire apparatus when operated in connection with an emergency."

KRS 189.390(5):

"No person shall drive a motor vehicle at such a slow speed as to impede or block the normal or reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

KRS 189.450:

"(1) No person shall stop a vehicle, leave it standing or cause it to stop or to be left standing upon the main traveled portion of a highway; * * *. This subsection shall not apply to:

"(a) A vehicle that has been disabled on the main traveled portion of such a highway in such a manner and to such extent that it is impossible to avoid the occupation of the main traveled portion or impracticable to remove it from the highway until repairs have been made or sufficient help obtained for its removal and shall not apply to wreckers at the scene of accidents or emergency vehicles;

(b) Motor vehicles when required to stop in obedience to the provisions of any section of the Kentucky Revised Statutes or any traffic ordinance, regulation or sign or the command of any peace officer;"

Williams argues that Chilton and Cook were negligent and that the statutory exemptions on which they rely do not apply because they were not at the scene of an emergency. He cites Jack Cole Co. v. Hoff, Ky., 274 S.W.2d 658, 51 A.L.R.2d 1 (1954), which discussed certain emergency vehicles within the exclusion clause

of KRS 189.450(1) but it did not involve a police car or wrecker.

Williams relies on Gasparac v. Castle, Ky., 330 S.W.2d 111 (1959) which held:

"The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended. Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable with the obligation to give preference to the emergency vehicle. There must be strict observance of the conditions which will exempt an emergency vehicle."

The foregoing quotation distinguishes this case from Gardner v. Switzer, Ky., 347 S.W.2d 84 (1961) relied on by Cook.

Chilton and Cook filed separate briefs and their arguments differ in some respects. Chilton referred to the exclusion clause of KRS 189.450(1) (a) and KRS 189.011(1) (a). He contends that because of these exceptions he was not guilty of negligence in stopping or slowing his police vehicle as he did at the time of the accident in question. He says that he was merely performing his police duties in slowing or bringing his vehicle to a stop in order to transmit a message which would bring about the removal of a vehicle blocking the road farther north.

Cook argues that they never stopped and that KRS 189.450(1) does not include any prohibition against automobiles in motion.[1] (His brief is silent as to KRS 189.390(5)). He contends that he complied with KRS 189.450(1) (b) in obeying a command of

the state police officer. He also argues that Williams did not meet the burden of proof required by CR 43.01(1) and that the only proof that Williams produced to support his claim that Cook and Chilton were stopped on the road was the following:

"Q. 48 Were they moving, either one of them, at the time you first saw them?

A. If they was I couldn't say. I'd have to say if they was moving—I'd say they'd stopped.

Q. 49 Did you see any brake lights or rear lights on the back of the wrecker that was toward you?

A No I didn't."

We now turn our attention to Williams' claim that the exceptions in KRS 189.450(1) do not "apply indiscriminately to wreckers and emergency vehicles under all conditions." We hold that they do as to Chilton for that statute says that a "police vehicle" is an emergency vehicle "at all times". But the exemption in KRS 189.450(1) (a) is not applicable to Cook because his wrecker was not "at the scene of" an accident. However, KRS 189.450(1) (b) provides that KRS 189.450 (1) "shall not apply to: (b) Motor vehicles when required to stop in obedience to the * * * sign or the command of any peace officer; * * *". The proof was that the officer signaled for Cook to slow down or stop. The signal given by Chilton was a command within the meaning of the statute but such a signal did not relieve Cook from exercising ordinary care. Melville v. Rollwage, 171 Ky. 607, 188 S.W. 638, L.R.A.1917B, 133 (1916); Lieberman v. McLaughlin, 233 Ky. 763, 26 S.W.2d 753 (1930); Travis v. Embry, Ky., 257 S.W.2d 64 (1953) and 60 C.J.S. Motor Vehicles § 360, p. 854. Nor did Chilton's statutory exemption re-

1. For a discussion regarding KRS 189.450 see Parker v. Redden, Ky., 421 S.W.2d 586 (1967).

lieve him from exercising ordinary care. Greyhound Corp. v. White, Ky., 323 S.W. 2d 578 (1958).

The law applicable to this situation was heretofore quoted herein from Gasparac v. Castle, Ky., 330 S.W.2d 111 (1959). It was repeated in City of Louisville v. Chapman, Ky., 413 S.W.2d 74 (1967) and Myers v. Able, Ky., 417 S.W.2d 235 (1967). The questions of whether either, or both appellees were negligent were for the jury to decide unless the acts, as a matter of law, were not the proximate cause of the damage which Williams suffered. The trial court held that these acts were not.

To reverse that ruling Williams cites McCoy v. Carter, Ky., 323 S.W.2d 210 (1959) which held that the determination of proximate cause is a question for the jury when reasonable minds could differ as to the cause of the accident.

We discussed proximate causes and supervening circumstances in Com., Dept. of Highways v. Graham, Ky., 410 S.W.2d 619 (1966); Swope v. Fallen, Ky., 413 S.W.2d 82 (1967) and Wilborn v. Sneed, Ky., 415 S.W.2d 858 (1967). In those cases there were "abnormal circumstances" such as brake failure but in the case now before us such abnormal circumstances did not exist. Snow and icy roads in the winter time are rather commonplace and the road conditions which existed in and around the scene of the accident were well known to the parties. The rationale in Carpenter v. Page Bros. Motor Co., Ky., 242 S.W.2d 993 (1951) applies. There, a wrecker, on a rainy and foggy night, was parked on the right-hand side of the road. No flares were placed on the road. Carpenter said he saw two dim lights on the wrecker and thought it was moving. He applied his brakes but could not avoid the collision. Carpenter sued but the circuit court directed a verdict in favor of the defendant owner of the wrecker. On appeal we reversed and said:

"We think the case should have been submitted to the jury. Certainly Car-penter was well aware of the physical characteristics surrounding the place on the highway where the collision occurred. As a mail carrier he traveled the highway daily * * *. It is true he said he saw the lights on the rear of the wrecker, but when he applied his brakes and attempted to pull around the wrecker he ran into it. The jury might well have believed that his acts were the proximate cause of the collision. On the other hand, the driver of the wrecker was equally apprised, or should have been, of the physical characteristics of the road at the place of the collision. He knew also of the condition of the weather and the road because he had been traveling upon it. Just as the jury could have believed that Carpenter's acts were the proximate cause of the accident, so they could have believed of the acts of the driver of the wrecker."

Photographs filed in evidence showed that the area in which the two vehicles were either slowly passing or stopped contained shoulders, a yellow caution line along the middle of the road and several signs directing that cars proceeding in the same direction should not pass. All parties were familiar with this area and were bound to consider these factors in the operation of their respective vehicles.

We are not convinced that there was insufficient evidence upon which a properly instructed jury could not have found that the acts of Chilton and Cook were a proximate cause of the accident. Ashton v. Roop, Ky., 244 S.W.2d 727 (1951); Riley v. Hornbuckle, Ky., 366 S.W.2d 304 (1963) and Dixie Transport Co. v. Reed, Ky., 386 S.W.2d 735 (1965).

Shortly before the accident Williams had the chains taken off the truck and then was unable to go up Duckhead Hill. He had to be pulled by a wrecker to the top of the hill before being able to operate on his own power. He knew the roads were slick and icy. He operated the truck at speeds varying from 30 to 40 miles

per hour, and the skid was caused by the application of brakes. Appellees claim he violated KRS 189.290 which required that an operator of a motor vehicle should drive with care. They say that his negligence caused and brought about the accident, therefore, he may not recover. We will dispose of that issue before discussing the acts of Chilton and Cook, because if their contention is correct there can be no recovery in this state since we do not apply the comparative negligence doctrine. Peerless Mfg. Corp. v. Davenport, 281 Ky. 654, 136 S.W.2d 779 (1940); Felix v. Stavis, Ky., 385 S.W.2d 72 (1964) and Myers v. Ben Snyder, Inc., 313 Ky. 832, 233 S.W.2d 1016 (1950).

■ They argue that the facts are such that " * * * reasonable minded men could arrive at only one conclusion from the testimony (therefore) the question (of contributory negligence) becomes one of law for the court" and there is no jury issue. Acres v. Hall's Adm'r, Ky., 253 S.W. 2d 373 (1952); Banner Transfer Co. v. Morse, Ky., 274 S.W.2d 380 (1955). They rely on Freeman et al. v. W. T. Sistrunk & Co., 312 Ky. 438, 227 S.W.2d 979 (1950); Lawhorn v. Holloway, Ky., 346 S.W.2d 302 (1961); Lee v. Dutli, Ky., 403 S.W.2d 703 (1966) and Johnson v. Hunt (W.D.Ky.) 122 F.Supp. 816 (1954). An examination of these cases will reveal that they are not analogous since they are factually different. They also rely on Jones v. Carr, Ky., 382 S.W.2d 853 (1964). Our interpretation of Carr is that where the facts are similar to the case now before us the claim of negligence is a jury issue. Also see Merrell v. Ball, Ky., 379 S.W.2d 465 (1964) and Norton v. Hughes, Ky., 408 S.W.2d 197 (1966). There was no act, or failure to act, on the part of Williams which convinces us that he was negligent as a matter of law. This was for a jury to determine. Pence v. Sprinkles, Ky., 394 S.W.2d 945 (1965) and Eubank's Adm'x v. Austin, Ky., 288 S.W.2d 358 (1956).

To support their argument that the trial court correctly dismissed the suit Chilton and Cook say that Wadkin's Adm'r v. Chesapeake & Ohio Railway Co., Ky., 298 S.W.2d 7 (1957) and Short Way Lines, Inc. v. Wallace, 295 Ky. 658, 175 S.W.2d 123 (1943) apply. Wadkins holds "that when the evidence given at the trial with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant." In Short Way we found that the evidence was insufficient to support the verdict.

In Bosshammer v. Lawton, Ky., 237 S. W.2d 520 (1951) Bosshammer's car was parked unattended on a public highway at the bottom of a hill. Lawton reached the crest of the hill and started downward when he noticed the parked car. Another car was pulling out on the highway but began to back up when Lawton sounded his horn. Lawton continued down the hill but the backing car pulled out on the highway and Lawton skidded into Bosshammer's car. There we quoted from 60 C.J.S. Motor Vehicles § 330, p. 770:

"As a general rule, a motorist who desires to stop his vehicle or to leave it unattended on a street or highway is under a duty to select a suitable place, where his vehicle will not constitute an obstruction of the highway or a source of danger to other users of the highway; and this duty has been held to exist independently of any statutory requirement."

We also said:

"We cannot accept the appellant's contention that the appellee was guilty of contributory negligence as a matter of law. He was not traveling at an unreasonable rate of speed. The skidding of a motor vehicle on a public highway is not negligence per se, but it is a question for the jury to determine whether the

skidding was caused by the driver's negligence."

Creedon v. Loring (C.C.A. 1) 249 F.2d 714 (1957) is factually similar to the case at bar. That opinion supports our conclusion that Williams was entitled to have a jury make a verdict. In Creedon the defendant Sparks was an independent contractor, who at the time was working for the state of New Hampshire in plowing out the snow on the highway. Defendant Loring was a highway patrolman of that state, also engaged in salting and plowing out the highway. Sparks, proceeding on the right side of the highway in a southerly direction, met Loring coming north on the same highway. Loring signaled to Sparks to stop as Loring wished to transfer a helper from his truck to that of Sparks. The trucks passed each other and came to stop about 150 feet apart according to defendants and abreast according to plaintiff, each on its right side. Plaintiff saw the two trucks at a distance of about 450 to 500 feet, applied his brakes and went into a skid. There was conflicting testimony as to the speed of Creedon's car. Creedon based his cause of action on the negligence of defendants in blocking the highway. The defendants pleaded no negligence on their part and contended that Creedon was contributorily negligent by reason of excessive speed, failure to keep a proper lookout, and other particulars. The appellate court held that the case was properly submitted to the jury.

We hold that the failure to submit the case before us to a jury was error. The judgment is reversed with directions to grant Williams a new trial.

WILLIAMS, C. J., and HILL, MILLIKEN, MONTGOMERY and PALMORE, JJ., concur.