Margaret C. PAGE, Appellant,

v.

Charles DODDS et al., Members of the Fiscal Court of Jefferson County, Appellees.

Court of Appeals of Kentucky.

Nov. 1, 1968.

Hogan, Taylor, Denzer & Bennett, James G. Bowman, Louisville, for appellant.

C. Alex Rose, Edward T. Ewen, Jr., E. P. Sawyer and William Walden, Louisville, for appellees.

CULLEN, Commissioner.

A Jefferson County police cruiser, on an emergency run, collided with an automobile operated by Margaret C. Page at a point on Dixie Highway where it is intersected by an entrance road to Dixie Manor Shopping Center. Patrolman Charles Dodds, who was driving the cruiser, and Patrolman Jack Coan, who was a passenger in the cruiser, sued Miss Page to recover damages for personal injuries. The Jefferson County Fiscal Court also sued Miss Page to recover for property damage to the cruiser. At the close of all the evidence the trial court directed a verdict of liability against Miss Page. The verdict awarded $1,598 to Dodds, $1,638 to Coan, and $1,275 to the fiscal court. Miss Page's motions for a new trial and for judgment n. o. v. were overruled. Judgment was entered upon the verdict. Miss Page has appealed making only the one contention that the trial court erred in directing a verdict against her.

Dixie Highway runs north and south and Dixie Manor Shopping Center is on the east side of the highway. In the area of the shopping center the highway has two lanes for northbound traffic and two for southbound traffic. The median area dividing the two sets of lanes, extending for some 100 feet south from the entrance to the shopping center, is paved with a level a few inches above the traffic lane level and is designed and marked as a storage lane for northbound traffic intending to turn left onto the roadway that intersects from the left side of Dixie Highway opposite to the entrance to the shopping center. There is a similar storage lane north of the intersection, for traffic intending to turn left into the shopping center. Traffic at the intersection is regulated by electric stop-and-go signs.

The accident occurred around 5:30 p. m. on a day in January. The police cruiser was headed north on Dixie Highway on its way to a hospital with a woman in labor. Its headlights were on, its siren was sounding continuously, and a flashing light on its roof was in operation. As it approached the intersection with the shopping-center entrance its path was obstructed by cars in both northbound lanes which were stopped and backed up from the intersection for a distance of approximately 200 feet, because the traffic light for Dixie Highway traffic was red. The driver of the cruiser then turned into the storage lane and proceeded toward the intersection in that lane. His testimony and Coan's was that he put the cruiser in second gear and reduced his speed to 25 or 30 miles an hour as he traversed the storage lane; however, there was other evidence that the cruiser did not materially reduce its speed after entering the storage lane. The intention of the driver of the cruiser was to swing back into the northbound lanes after clearing the stopped cars in those lanes at the intersection, but as the cruiser entered the intersection it collided with the Page car, which was heading west across the intersection from the entrance to the shopping center. Miss Page testified that when she arrived at the intersection

the light was red for her and she stopped; it changed to green and she started across the intersection; the windows of her car were closed and she at no time heard the siren; the cars stopped in the northbound lanes on Dixie Highway blocked her view to the south and she did not see the cruiser or the flashing light on its roof until the cruiser entered the intersection.

Five witnesses who were in the vicinity of the intersection at the time of the accident testified that they heard the siren of the police cruiser when it was at least two blocks south of the intersection, and four of them said that they saw the cruiser when it was a block away. However, as concerns hearing the siren, two of the witnesses were not in their car when they first heard the siren, and another two had their car windows open; and as concerns *seeing* the approaching car, all of the five witnesses were in positions where their view to the south was not blocked, whereas, as stated above, Miss Page's view was obstructed by the cars stopped in the northbound lanes on Dixie Highway.

The appellees maintain that the question is simply whether Miss Page should have heard the siren; and that since five other persons in the vicinity heard the siren she should have heard it also, and yielded the right of way. In our opinion the issue is not that simple.

Several statutes are involved. KRS 189.-320 states that certain designated emergency vehicles "shall have the right of way with due regard to the safety of the public." KRS 189.080 provides that when an emergency vehicle equipped with a siren "is operated in response to an emergency call" the driver "shall sound the siren when necessary to warn pedestrians and other drivers of the approach of the vehicle." KRS 189.390 exempts emergency vehicles from speed limits when sounding a siren and displaying certain red or blue lights, with the following qualification:

"* * * This provision shall not relieve the driver of an authorized emer-

gency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

The foregoing qualification in KRS 189.-390 has been regarded by this court as applicable not only to exceeding speed limits but to disregarding traffic signals at an intersection. See Henderson v. Watson, Ky., 262 S.W.2d 811; Gasparac v. Castle, Ky., 330 S.W.2d 111.

In four previous cases this court has been confronted with the question of the respective rights and duties of the operator of an emergency vehicle and the operator of a private automobile at an intersection where the private automobile had the green light. The cases are: Henderson v. Watson, Ky., 262 S.W.2d 811; Gasparac v. Castle, Ky., 330 S.W.2d 111; City of Louisville v. Chapman, Ky., 413 S.W.2d 74; and Myers v. Able, Ky., 417 S.W.2d 235. In each of the cases we held that a jury issue was presented as to the adequacy of the warning of the approach of the emergency vehicle.

■■■ The proposition for which the four previous cases stand may be found in the following language of the Gasparac case (330 S.W.2d at page 113):

"* * * The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver, for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended. *Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable with the obligation to give preference to the emergency vehicle.* There must be strict observance of the conditions which will exempt an emer-

gency vehicle. When a driver has the preferred right of way, *he must be exceptionally alert when he intends to run a red traffic light at a busy street intersection* and must take care commensurate with the serious consequences that might follow his failure to do so. He should remember that other drivers have the right to assume that the red light signal will be obeyed by him unless duly and timely warned to the contrary. * * *" (our emphasis).

 Under the rule as thus stated, Miss Page was not required to yield the right of way or to anticipate that the police cruiser would run the red light unless the warning was adequate for a person in her position. There is nothing else in the circumstances of the accident on which to find her negligent. So the controlling issue in the case is the issue of her negligence, which depends upon whether under the circumstances of the case she did or should have apprehended the warning that was given.

As concerns whether or not Miss Page heard or should have heard the siren we think there may be some significance in the fact that four of the five witnesses who heard the siren were either standing in the open air or had their car windows open, and the other witness, who had her car windows shut, was stopped in the storage lane at the north edge of the intersection, facing the direction (south) from which the cruiser was coming, and therefore was in a better position than was Miss Page to be alerted to the sound of the siren. In our opinion reasonable minds might differ as to whether the siren was so loud that Miss Page must have heard it.

But we think that even if it be conceded that Miss Page should have heard the siren it does not follow necessarily that she should have been alerted as to the intended course of the cruiser. It must be remembered that the two northbound lanes were occupied by stopped cars so reasonable minds might consider that Miss Page (even if she had heard the siren) would not expect a vehicle to pass through the intersec-

tion in those lanes. The storage lane was not designed or intended as a passageway for vehicles going north through the intersection, so it reasonably could be believed that Miss Page, even if aware of the existence of the storage lane, would not anticipate that it would be used by a vehicle for such a passageway.

Since the police cruiser intended not only to run the red light, but to use an extraordinary path in reaching the intersection, it might reasonably be considered that a warning which merely signified that an emergency vehicle was approaching was not adequate to give notice of the extraordinary course the vehicle would pursue.

It is our conclusion that the issue of Miss Page's negligence in failing to yield to the cruiser was for the jury and that the trial court erred in directing a verdict against her.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

All concur.