Frances M. WETZ, Executor of the Estate of Grant J. Wetz, Deceased, Appellee,

v.

Rupert Reginal THORPE and Town of Salix, Iowa, a Corporation, Appellants.

No. 56128.

Supreme Court of Iowa.

Feb. 20, 1974.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellants.

Thomas L. McCullough, Sac City and Joe Cosgrove, Sioux City, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

REES, Justice.

This is an appeal from a judgment entered in an automobile negligence action brought by Frances M. Wetz, executor of the estate of her deceased husband, Grant J. Wetz, and against the Town of Salix, Iowa and Rupert Reginal Thorpe. The action arises out of an automobile accident which occurred on October 29, 1970 at the intersection of Sixth and Nebraska Streets in Sioux City. Sixth Street is a one-way street with traffic permitted to proceed westerly, and Nebraska Street is a one-way street with traffic proceeding northerly, the intersection being controlled by red and green automatic traffic signals. Wetz was traveling westerly on Sixth Street and entered the intersection on a green light when his vehicle collided with an ambulance driven by defendant Thorpe and owned by defendant Town of Salix, which ambulance was then traveling north on Nebraska Street and had entered the intersection against a red light. The siren and the red lights on the ambulance were operating at the time.

Wetz, a practicing attorney, aged 59, died as the result of injuries sustained in the accident. The action was tried to the court without a jury. The court rendered judgment in favor of plaintiff and against both defendants in the total sum of $188,662.19, together with interest from the date of the accident, and for costs. Both defendants appeal and we affirm.

It appears to be undisputed in the record that Sixth Street had three lanes for westbound traffic and that parking of cars was allowed on either side thereof in addition to the traffic lanes, and that Nebraska Street was a one-way street for traffic proceeding north, and having three lanes for traffic in addition to parking lanes on both sides. Defendants concede that the Wetz vehicle entered the intersection on a green light and that the ambulance entered the intersection against a red light.

At the time of trial defendant Thorpe was the fire chief at Salix, and head of the Salix Rescue Unit. On October 29, 1970 he received a call for help to the home of one Irish, to which he responded and found Mr. Irish slumped in a chair having apparently suffered a heart attack. Thorpe and his assistants administered oxygen to Irish and placed him in the ambulance to take him to St. Joseph Hospital in Sioux City. Thorpe was driving and his three assistants—Copple, Hubert and Mulvihill—accompanied him in the ambulance. Shortly before the collision of the ambulance with the Wetz vehicle, Copple was sitting on the motor mount at the front and in the cab portion of the ambulance; Hubert was leaning against the wall of the ambulance on the right side, and Mulvihill was in the rear of the ambulance administering oxygen to the patient Irish. The ambulance was traveling in the middle lane of the three lanes provided for vehicular traffic in Nebraska Street. Defendant Thorpe testified that as he approached the intersection of Sixth and Nebraska, the signal light was red and had turned from green to red when he was about a half block south of the intersection. There was no traffic ahead of the ambulance and he could see a car stopped on Sixth Street in

the south lane and also a car parked there at the curb. In the north lane of traffic on Sixth Street other cars were stopped. He testified that he was driving from 15 to 20 miles per hour, and that when he approached the intersection and observed the cars were stopped he accelerated the speed of his vehicle. When he entered the intersection Copple yelled to him to "Stop", and looking to the right, Thorpe saw the Wetz car entering the intersection. He then applied the brakes and left three to four feet of skid marks on the pavement, changing the course of the ambulance slightly to the west prior to the impact. Collision ensued. After the accident, Mr. Irish was transferred into another ambulance and was accompanied to the hospital in the ambulance by Mulvihill. Copple and Thorpe assisted in putting the decedent Wetz on a stretcher into a third ambulance.

In her petition plaintiff asserted the driver of the defendant vehicle was negligent in the following particulars which she alleges were a proximate cause of the accident and fatal injuries and damages to plaintiff's decedent and his estate:

(a) In failing to maintain a proper lookout.

(b) In failing to have the vehicle under control.

(c) In failing to have the vehicle under control and reduce the speed to a reasonable and proper rate upon the approach of an intersection, in violation of § 321.288, The Code, 1966.

(d) In failing to drive the vehicle at a careful and prudent speed having due regard to the traffic and conditions existing at the time, in violation of § 321.285, The Code, 1966.

(e) In failing to stop in obedience to a red signal light, in violation of §§ 321.256 and 321.257, The Code, 1966.

By way of affirmative defense, defendants asserted plaintiff's decedent was guilty of negligence contributing to and proximately causing his injuries and resulting death, in the following particulars:

(a) Failure to keep a proper lookout.

(b) Failure to observe and yield the right of way to the emergency vehicle of the defendants.

(c) Failure to have proper control of his automobile.

Defendants advance the following claimed errors upon which they rely for reversal. They contend the trial court erred:

(1) In overruling their motion for a directed verdict based upon the contributory negligence of plaintiff's decedent in failing to yield the right of way to an emergency vehicle, and failing to keep a proper lookout.

(2) In finding that plaintiff's decedent was free from contributory negligence.

(3) In awarding excessive damages under the evidence of the case.

(4) In allowing interest on the total amount of the judgment from the date of death when present value was already computed into the damage award.

(5) In finding for the plaintiff and assessing damages based upon the present value or present worth of those damages under the evidence in the case.

I. After all parties had rested, defendants moved the court to direct a verdict in their favor based on tthe contributory negligence of plaintiff's decedent for failure to keep a proper lookout and for his claimed failure to yield the right of way to an emergency vehicle while its red lights were flashing and its siren was sounding. The record does not disclose a separate ruling on the motion of the defendants for a directed verdict; however, in the court's findings of facts the following was specifically determined:

"The Court finds that plaintiff's decedent did not know of the approach of

the ambulance, nor, having the green light, and under all the circumstances, should he have known in the exercise of ordinary care of its approach, and he was under no duty to anticipate its presence.

"Defendants have failed to prove by a preponderance of the evidence their affirmative defense of contributory negligence of plaintiff's decedent, specifically: Failure of lookout; failure to yield to an emergency vehicle; or failure to have proper control; or that all or any of such specifications of negligence were a proximate cause of the collision."

The findings of fact of the court in a law action tried without a jury are binding upon us if supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure; Reichle v. Zeman, 204 N.W.2d 636, 637 (Iowa 1973).

In considering the propriety of a motion for directed verdict, the court views the evidence in the light most favorable to the party against whom the motion was made (in the instant case, in the light most favorable to plaintiff). Rule 344(f)(2), R.C.P.; Greenwell v. Meredith Corp., 189 N.W.2d 901, 904 (Iowa 1971). To establish their allegation of contributory negligence as an affirmative defense, the burden was on defendants to prove the proposition by a preponderance of the evidence. Generally a question of contributory negligence is for the trier of the fact; only in exceptional cases does the party having the burden of proof establish it as a matter of law. Rule 344(f)(10), R.C.P.; Ackerman v. James, 200 N.W.2d 818, 824 (Iowa 1972); Capener v. Duin, 173 N.W.2d 80, 81 (Iowa 1969). Contributory negligence will be decided as a matter of law only in the exceptional case in which such negligence is so palpable, flagrant and manifest that reasonable minds may fairly reach no other conclusion. Ackerman v. James, *supra*. Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, the question becomes one for the jury or factfinder. Rule 344(f)(17), R.C.P.

With the foregoing in mind, we proceed to a review of the record evidence. It is conceded by the defendants that the Wetz vehicle entered the intersection at Sixth Street and Nebraska with a green light in the driver's favor. Ordinarily the operator of a vehicle has the right to proceed through an intersection with proper caution, relying upon a presumption that vehicles faced with the red light will stop. Sections 321.256, 321.257, The Code, 1966. An exception is provided by § 321.324, which gives an authorized emergency vehicle with red lights flashing or an audible signal sounding the immediate right of way.

Section 321.324, The Code, 1966, provides:

"Upon the immediate approach of an authorized emergency vehicle with any lamp or device displaying a red light or flashing red light from directly in front thereof, or when the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the righthand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

\*     \*     \*     \*     \*     \*

"This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

Section 321.231, The Code, 1966, authorizes emergency vehicles to proceed through an intersection on a red light. It specifically provides:

"The driver of any authorized emergency vehicle when responding to an

emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal."

Statutes similar to the foregoing have provided the framework for many cases in other jurisdictions where courts have been confronted with the question of respective rights and duties of the operators of emergency vehicles and the operators of private automobiles at intersections where the private automobile was not inhibited by traffic signals. In Lakoduk v. Cruger, 48 Wash.2d 642, 296 P.2d 690, 701, quoting from Lucas v. City of Los Angeles, 10 Cal. 2d 476, 75 P.2d 599, 602, the court said:

" ' * * * "It is evident that the right of way of fire apparatus over other vehicles is dependent upon 'due regard to the safety of the public' only insofar as such 'due regard' affects the person required to yield the right of way. Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence to the fire apparatus." *This is the only reasonable interpretation that the statute will bear.'* "

In McEwen Funeral Service v. Charlotte City Coach Lines, 248 N.C. 146, 102 S.E.2d 816, 820, the court said:

"No duty rests on the operator of a motor vehicle making normal use of a highway to yield the right of way to another vehicle on an emergency mission until an appropriate warning has been directed to him, and he has reasonable opportunity to yield his prior right. The audible sound which the statute * * * requires is such a sound as was in fact heard and comprehended, or should have been heard and its meaning understood, by a reasonably prudent operator called upon to yield the right of way."

In Page v. Dodds (Ky.), 433 S.W.2d 656, 658, quoting from Gasparac v. Castle (Ky.), 330 S.W.2d 111, 113, the court said:

" ' * * * The provision exempting an emergency vehicle from ordinary traffic regulations confers no absolute immunity upon the driver, for it is based on the prescribed conditions. Nor does the preferential status relieve the driver from the duty of having due regard for the safety of other people lawfully using a street or highway. The duty is measured by the danger to be apprehended. *Notice and warning to persons required to yield the right of way is essential, and a reasonable opportunity to yield or get out of the way is necessary before they become chargeable with the obligation to give preference to the emergency vehicle.'* "

The relevent question before the trial court in this case and before us now becomes whether decendent Wetz saw or should have seen and heard or should have heard defendants' emergency vehicle as it approached the intersection.

One witness, Edna Dutton, was driving north on Nebraska Street in the left lane, intending to turn left (or west) on to Sixth Street. She testified she stopped at the corner of Nebraska and Sixth for the red light, and that she had heard the siren of defendants' vehicle before reaching the intersection, but that it "wasn't very loud, it wasn't like ours at all and I had a little time trying to find out where it was." The defendants' ambulance was approaching her from behind and passed her vehicle and proceeded on into the intersection.

Several office workers in buildings adjacent to the intersection and pedestrians in the area testified to hearing the siren and seeing the flashing lights as the defendants' vehicle passed their vantage point. One witness, Swanson, was walking across Nebraska Street from northeast to northwest; the witness, Schol, was near an office window facing east in the building on the southwest corner of Sixth and Nebras-

ka; the witness, Ayes, was standing on the west side of Nebraska Street midway between Fifth and Sixth Streets. The witness, Ebel, was standing on the east side of Nebraska approximately 100 feet south of the intersection of Sixth and Nebraska; ·the witness, Ashmore, was near an office window facing south in the building on the northwest corner of Sixth and Nebraska. The witness, James D. Hansen, was in an office building on the southwest corner of Sixth and Nebraska. All of said witnesses were in the north-south tunnel of sound formed by the several buildings on Nebraska Street. Bearing on this point the testimony of the expert Ronald Nelson becomes significant.

Ronald Nelson is an expert in sound waves. He testified that an avenue of sound going north-south along Nebraska Street was created by the walled-in tunnel of the large buildings along Nebraska Street. He testified that persons on the side streets branching off from Nebraska easterly and westerly would hear the siren only by inflection and reflection off the buildings if in fact the buildings were structured and angled so as not to absorb sound. He stated that sound energy drops inversely to the square of the distance traveled (i. e., "A", three times as far away from a siren as "B", will only hear the sound with ⅑th the intensity as "B" will hear it.) It is therefore consistent for persons on Nebraska Street to hear a siren while someone on the streets branching off Nebraska would hear nothing.

The witness Getty was walking on Sixth Street about a half block east of the intersection of Sixth and Nebraska when he heard a siren; but he testified he saw no emergency vehicle until he reached the corner and then saw the flashing lights on the defendants' ambulance.

The witness Kronick, a police officer and part-time ambulance driver, testified he heard the siren as he was walking out of a store two blocks east of the intersection of Sixth and Nebraska, and that he

then entered his own vehicle and drove west on Sixth Street, but testified he "could not see the ambulance prior to its entering the intersection."

The witness Kruse, driving east on Fifth Street, intending to turn left onto Nebraska, stated she could not see north or south of Fifth Street because of the buildings along Fifth Street and heard the siren only when she was about a car's length from Nebraska Street. She was unable to determine the origin of the sound of the siren until she had entered the intersection of Fifth and Nebraska and saw the flashing lights on the Salix vehicle approaching from her right.

The witness Robert L. Hanson was approaching the intersection of Sixth and Nebraska on Sixth Street in the lane farthest to the right, intending to turn right onto Nebraska, when the car in front of him stopped, although the traffic light was green. He testified he stopped behind the car in front of him and that he heard a "light" sound of a siren but could not pinpoint the direction of its origin until he looked left and saw the Salix vehicle approaching the intersection. Hanson testified decedent Wetz with his car windows closed · and looking straight ahead then passed him in the centerlane to Hanson's left.

Several witnesses testified to at least one car being stopped in the southermost traffic lane of Sixth Street at the intersection, even though the light was green, and one witness testified in addition that another car had preceded Wetz through the intersection by about five seconds.

Such is the evidence. Under the rules above stated, decedent Wetz was not required to yield the right of way or anticipate that the emergency vehicle would run the red light unless the warning was adequate for a person in his position. Trial court was required to view the evidence in the light most favorable to Wetz in ruling upon defendants' motion for directed verdict. Considering the fact the buildings

obstructed his view to the left on Nebraska, as would any cars stopped in the south lane of Sixth Street, and in light of the testimony of the several witnesses, the court properly found Wetz could not see the rescue vehicle approaching the intersection even with its lights flashing, nor should he have seen the vehicle.

Whether or not Wetz heard or should have heard the siren as he approached the intersection is also a question on which reasonable minds could differ under the evidence in this case. The testimony of the expert witness Nelson and the statements elicited from other witnesses cumulatively support this contention. No audible warning to Wetz can be inferred from the fact vehicles were stopped at the green light at the intersection as he approached it —there is nothing in the record to indicate the other vehicles were stopped because they heard the siren. The evidence could be interpreted to permit a finding they were stopped because they saw the approaching ambulance as they neared the intersection.

A reasonable mind could have concluded that on entering the intersection as Wetz did he was acting with due care under the circumstances and consequently the question as to whether or not he was guilty of contributory negligence at said time and place was for the trier of fact to determine. Page v. Dodds, *supra*; Bay City v. Carnes, 3 Mich.App. 623, 143 N.W.2d 148; Clark v. Sterrett, 141 Ind.App. 384, 220 N. E.2d 779; Fayette County v. Veach, Ky., 294 S.W.2d 541. The trial court was correct in refusing to find that Wetz was adequately warned as a matter of law.

In view of the record evidence we conclude further trial court did not err in finding Wetz exercised the requisite due care upon entering the intersection and was therefore not negligent in so doing. There was substantial evidence to support the court's factual finding Wetz did not see or hear nor that he should have seen or heard the defendants' vehicle, so that he might have been adequately warned of the approach of said vehicle. In accord see District of Columbia v. Lapiana, D.C.App., 194 A.2d 303; Emmco Ins. Co. v. Ocean Accident & Guarantee Corp., La.App., 151 So.2d 567; McEwen Funeral Service v. Charlotte City Coach Lines, *supra*; City of Seattle v. Lough, 45 Wash.2d 286, 273 P.2d 984; Tiedebohl v. Springer, 55 N.M. 295, 232 P.2d 694; City of Lansing v. Hathaway, 280 Mich. 87, 273 N.W. 403.

II. The decedent Wetz was 59 years old at the time of his death. The parties stipulated that according to the 1958 Commissioner's Standard Ordinary Mortality Table, life expectancy of a person 59 years of age was 16.81 years. The deceased was married in 1945 to Frances Wetz who survived as his widow. He had served four years in the military, and had been engaged in the practice of law before his service experience and afterwards, working in a partnership with another lawyer in Sioux City since 1945. He was in good health, enthusiastic about his work and had expressed no intention of retiring.

Mrs. Wetz testified she had not worked outside the home except for a few months immediately following the marriage, and that the deceased was the sole provider in terms of accumulating an estate. The parties had three children. Gregory, age 25 at time of trial, was attending law school, and expected to complete his legal education. He had served in the military and was receiving some government benefits to aid in financing his college experience. Carol, age 24 at time of trial, was married and living in Omaha. Mark, age 18 at trial, was a senior in high school with plans to attend college.

The probate inventory in Wetz' estate, which was introduced as an exhibit, indicated he left property valued at $105,150.-00, including life insurance totalling $25,454.00. He owned and maintained with the help of his family a six-unit apartment house in Sioux City, was named as the depositor in two joint savings accounts with

his wife, owned U.S. Treasury bonds, joint tenancy real estate, property holdings and stock certificates, which accumulations evidenced a considerable degree of frugality. Decedent's 1969 federal income tax return showed net earnings of approximately $21,180.00, and his 1970 return of income showed earnings of $8,706.00 for the first ten months of the year, primarily from his engagement in the practice of law.

Trial court awarded damages to the estate in the amount of $188,662.19, together with legal interest from the date of the accident, and costs. Said damage award was made up of the following:

$35,000 for the present value of the estate which decedent would reasonably be expected to have saved and accumulated as a result of his own efforts from the date of his death had he lived out the term of his natural expectancy.

$120,008, the present worth of the value of support which decedent would have contributed to his wife and children.

■ $30,000, the present worth of the value of services decedent would have performed for his wife and children.

Defendants contend such a damage award in the particulars set out above is excessive and without substantial evidence to support it.

In approaching this claimed error, we must be mindful of the statement of this court in Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 659–660 (Iowa 1969):

"It is not for us to invade the province of the jury. In fact a verdict will not be set aside or altered unless it is, (1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motives; or (4) it is lacking in evidential support.

"If the verdicts are the result of passion and prejudice a new trial should be granted, but if they are merely excessive because not supported by sufficient evidence, even in the absence of passion and prejudice, justice may be effectuated by ordering a remittitur of the excess as a condition for avoiding a new trial. (citations).

"In considering defendants' contention the verdicts are so excessive as to shock the conscience and show passion and prejudice, we must take the evidence in the aspect most favorable to plaintiffs which it will reasonably bear."

See also Goettelman v. Stoen, 182 N.W.2d 415, 419–421 (Iowa 1970).

■ We see nothing in this case to indicate the court's damage award was excessive or prompted by anything other than common sense and fairness in the light of the record evidence. The court noted the impact of inflation upon the award, and contrary to appellants' assertion of error could and did use present worth calculations without hearing evidence as to calculating procedures. We see no reason to delve further into the matter. See instruction 3.10, Vol. I, Iowa Uniform Jury Instructions, and see Adams v. Deur, 173 N.W.2d 100 (Iowa 1969).

III. Trial court ordered the entry of judgment in the amount stated above, which according to the court's decree was a damage figure discounted to present worth plus interest on the award from the date of decedent's death. Defendants assert error in such an allowance and contend interest should have been allowed, if the judgment is permitted to stand, only from the date of the judgment or verdict.

A fair reading of the court's findings, conclusions and judgment indicates to us the judgment award was made as of the date of death.

■ We recognize there is a general rule to the effect that interest is not recoverable upon an unliquidated demand until it has been reduced to judgment. This

court has recognized exceptions to such general rule, however, and has held that where damages are complete at a given time, interest may be allowed from such date and time. Certainly the injury and resulting damage in this case were complete and the obligation of the defendants to pay was perfect at the instant of death and an allowance of interest from the date of death is essential to the accomplishment of full justice. Bridenstine v. Iowa City Elec. Ry. Co., 181 Iowa 1124, 1135–1137, 165 N.W. 435, 439–440; General Mills v. Prall, 244 Iowa 218, 221, 56 N.W.2d 596, 598; Abel v. Dodge, 261 Iowa 1, 11, 152 N.W.2d 823, 829; Hurtig v. Bjork, 258 Iowa 155, 163, 138 N.W.2d 62, 67.

We find no error in the record and affirm the trial court.

Affirmed.