Jack L. RUSH, Appellant,

v.

SIOUX CITY, Iowa, a Municipal Corporation, et al., Robert T. Bean and Bonnie J. Warren, Appellees.

No. 56366.

Supreme Court of Iowa.

March 17, 1976.

Wilson, Rhinehart & Bikakis, Sioux City, for appellant.

Gleysteen, Harper, Kunze, Eidsmoe & Heidman, Sioux City, for appellees, City of Sioux City, Iowa, and Robert T. Bean.

MASON, Justice.

A motor vehicle collision in which a Volkswagen Fastback struck a panel bread truck from the rear gave rise to a lawsuit instituted by Jack L. Rush, driver of the panel truck.

The collision occurred at twelve o'clock noon December 26, 1968, in Sioux City as plaintiff Jack L. Rush, an employee of the Metz Baking Company, was driving a company bread truck south on U.S. Highway 75 (Plymouth Street) followed by defendant Mrs. Bonnie J. Warren in her Volkswagen. Both vehicles were traveling at approximately 20 miles per hour on the icy, snow-packed street.

Meanwhile, defendant Robert T. Bean, a Sioux City police officer, was driving a city owned squad car east on Sixth Street, approaching the intersection with highway 75. After either slowing down or stopping at the stop sign, Bean drove into the intersection and onto highway 75 turning north in front of plaintiff who was about to enter the intersection. In order to avoid a collision with the squad car, plaintiff stopped quickly. Within seconds, Mrs. Warren, unable to bring the Volkswagen to a stop, collided with the back end of the bread truck. There was no impact between the vehicle operated by plaintiff and the police car.

Rush sought recovery from the City of Sioux City, a municipal corporation, Robert T. Bean, a Sioux City police officer, and Bonnie J. Warren, owner and operator of the Volkswagen, for personal injuries.

Plaintiff's petition filed December 18, 1970, was in five divisions. In division 1

Rush's claim for relief was based on the theory the concurrent negligence of all three defendants in one or more of the particulars specified was a proximate cause of his injuries; division 2 is bottomed upon alleged negligence of the City and its employee, Robert Bean; division 3 rests upon the alleged negligence of Bean alone; division 4 seeks recovery on the theory the negligence of Warren alone was the proximate cause of the collision; and division 5 is predicated on the theory the alleged negligence of Bean and Warren concurred in proximately causing plaintiff's damages.

Sioux City filed a motion to dismiss plaintiff's petition as to the City alleging Rush did not bring his action within three months following the accident and did not affirmatively allege that a written notice of the accident had been given to the City within 60 days following the accident as required by chapter 613A of the Code as then in force. Plaintiff resisted the motion. Following hearing the court sustained the City's motion.

Before trial Rush and Warren and their respective spouses entered into an agreement for payment of $10,000 (the amount of insurance coverage available from Warren) in return for a release of Rush's claim against Warren.

The case came on for trial to a jury. Before the introduction of any evidence the court on its own motion dismissed plaintiff's petition "as far as it concerns the defendant Bonnie J. Warren." The matter proceeded on plaintiff's claim against Bean which resulted in a verdict for the police officer.

Plaintiff appeals from the order dismissing his petition against the municipal corporation and as against Warren and from judgment following denial of plaintiff's motion for new trial.

Officer Bean testified at the trial that on December 26 he was working the 7 a. m. to 3 p. m. shift as an accident investigator and as a backup for the regular east or west side traffic cars on all personal injury accidents. When at Fifth and Iowa Streets he was dispatched by police radio to a personal injury accident at Thirty-second and high-

way 75 north. The officer further testified as he proceeded to Sixth Street he engaged the siren and rotating red lights, both of which were in operation as the squad car turned north at the intersection of highway 75. There was some dispute at trial as to the extent which Officer Bean used the emergency equipment on the squad car after being dispatched to the scene of the accident.

Robert Vander Weil, another Sioux City police officer, was also dispatched to the accident on highway 75 north. He followed Officer Bean down Sixth Street and onto highway 75. He corroborated Bean's testimony as to the operation of the lights and siren. A construction worker who witnessed the collision testified substantially to the same extent except for the fact the siren stopped as the squad car approached the intersection.

In opposition to this is the plaintiff's testimony that while he did observe the squad car, he did not hear anything. He was not sure whether the emergency flashing lights were turned on. The reliability of this testimony was put into question because of the fact plaintiff, shortly after the accident, had prepared a "questionnaire" in his own writing for his chiropractor, Irving Molstad. This questionnaire contained information both squad cars were operating their sirens and that defendant Bean's car had its lights in operation.

In connection with the settlement agreement between Rush and Warren plaintiff entered and "renewed" a motion in limine which sought to exclude any evidence concerning the agreement. The first motion was made prior to opening statements and the taking of testimony and was overruled with the reservation by the trial court of the right to reconsider the ruling.

During trial, but in the absence of the jury, plaintiff renewed his motion in limine. Again, the trial court overruled it subject to reconsideration. At this point it appears plaintiff wished that if such evidence of the agreement were later admitted, any error be predicated upon (or preserved by) the

trial court's *overruling of the motion itself* rather than by an in-court objection. Plaintiff felt this would avoid prejudice.

The trial court, on the other hand, reminded plaintiff the general rule is, when a motion in limine is overruled, "the party is on notice that he should make proper objections at the proper time. You have made your record, and the Court doesn't want to prohibit you from doing that, *but it's the decision of the plaintiff as to the matter of objections.*" (Emphasis supplied).

When the defense cross-examined Mrs. Warren on the settlement agreement, plaintiff lodged no objection. The appendix indicates the agreement may also have been referred to in opening argument.

We have formulated in the following fashion what we believe plaintiff maintains are the issues presented for review by his appeal:

1. A. Did the fact that a Sioux City police officer investigated the collision give the City, as the officer's principal, notice of the accident, thus substantially complying with section 613A.5, The Code, 1971?

B. Does section 613A.7, when read in conjunction with section 613A.4(4), serve to effect a waiver of the notice requirement in situations where a city possesses liability insurance?

2. A. Should evidence of the settlement agreement between plaintiff and Mrs. Warren have been admitted into evidence? Was error preserved?

B. Did the trial court's *sua sponte* dismissal of the petition against Mrs. Warren, due to the settlement agreement, constitute reversible error?

3. A. Was a fact question generated as to whether Officer Bean was on an authorized emergency mission?

B. Assuming Officer Bean was on an authorized emergency mission, was he required to have in operation the squad car's "lights and/or siren" in order to be exempt from ordinary traffic regulations?

C. Did trial court commit error by not submitting plaintiff's requested instructions 4, 5 and 7 on the officer's duty of care under the provisions of a city ordinance?

D. Should the trial court have submitted an instruction dealing with the question whether Officer Bean slowed down and proceeded cautiously through the stop sign, not acting with reckless disregard for the safety of others?

4. Was the evidence of plaintiff's contributory negligence sufficient to justify the submission of that issue to the jury?

I. As mentioned, the City's motion to dismiss based on noncompliance with the notice provisions of section 613A.5, The Code, 1971 (then Acts of the Sixty-second General Assembly, chapter 405, section 5) was granted. Plaintiff asserts this constituted error for two reasons. First, since a City police officer investigated the accident, the City as the officer's principal had notice of it. This, it is argued, constituted "substantial compliance" with section 613A.5. Second, in the words of plaintiff, " * * * Section 613A.2 imposes liability upon a municipality for its torts, and Section 613A.5 is [a] valid limitation of acts bar of such liability unless notice is given within sixty days or suit is commenced within ninety days. However, 613A.7 then provides for a waiver of the limitation of actions bar contained in 613A.5 by the procurement of insurance. In other words, the right to sue is given in 613A.2, limited in 613A.5, but such limitation is removed by application of 613A.7 and 613A.4(4) which read together have the effect of abolishing the limitation of actions section in situations where the municipality has procured insurance."

The foregoing grounds were raised in plaintiff's resistance to motion to dismiss. In his motion for a new trial plaintiff stated: "The Court erred in dismissing the Petition of the plaintiff against the City of Sioux City, Iowa, a Municipal Corporation." In denying this motion, the trial court concluded, " * * * the ground is moot, because no appeal was taken from the ruling dismissing the petition as to defendant City of Sioux City, Iowa, and therefore this ruling is final and must be considered correct, because the time for appeal has elapsed."

Plaintiff challenges the basis of this ruling. The ruling of the trial court dismissing the petition as to the defendant Sioux City was entered March 12, 1971. Notice of appeal was filed May 3, 1973. Under rule 331, Rules of Civil Procedure, only final judgments or decisions may be appealed as a matter of right. Interlocutory appeals may be taken only with permission. Rule 332, R.C.P. Rule 335(a), R.C.P., provides that "appeals to the supreme court must be taken within, and not after, thirty [30] days from the entry of the order. * * *."

In those divisions of his petition directed against the City plaintiff had alleged "that at said time and place, the defendant, Robert T. Bean, was acting within the scope of his employment for the City of Sioux City, Iowa, and was driving the said police car with its permission and consent." Thus, plaintiff in seeking damages from the City for his injuries was relying on the theory negligence of the City's employee, Officer Bean, in one or more of the particulars specified was a proximate cause of the collision. In other words, the claimed basis of liability asserted against the City was dependent on the claimed basis of liability asserted against Bean.

Where the claimed basis of liability of the dismissed defendant is connected with or so related to the claimed basis of liability of a remaining defendant so that one may affect the other, a judgment as to the discharged defendant is ordinarily not appealable until the issues as to a remaining defendant are settled. See *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 597 (Iowa 1971); *Bennett v. Ida County*, 203 N.W.2d 228, 233–234 (Iowa 1972); and *Lunday v. Vogelmann*, 213 N.W.2d 904, 906 (Iowa 1973); and citations appearing in these opinions.

The case against Bean was unsettled at the time of the trial court's order dismissing plaintiff's petition against the City and it remained so until the order denying plaintiff's motion for new trial was entered. His notice of appeal was filed within 30 days from that date.

Plaintiff is properly before this court on the issue of dismissal of the case against the City.

II. As pointed out, the collision involved occurred December 26, 1968. The petition was filed December 18, 1970, and the original notice served on the City December 21.

Section 613A.5, The Code, 1971, in relevant portion, requires that "every person who claims damages from any municipality for or on account of any wrongful death, loss or injury * * * shall commence an action therefor within three months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof * * *."

In its motion to dismiss the City asserted plaintiff had failed to plead or allege that a written notice of the claim stating the time, place and circumstances of the accident and the amount of compensation or other relief demanded was presented to the City of Sioux City within the 60 days following the alleged loss or injury. The City further alleged that pursuant to section 613A.5 an action against a municipality must be commenced within three months following the date of the accident and injury unless the person injured shall present a written notice of the claim to the municipality within 60 days following the alleged loss or injury.

Plaintiff in resistance called attention to the fact that in paragraph 3 of his petition he had alleged "that said collision was on December 26, 1968, investigated by police officer Tope, an employee of the City of Sioux City, who was notified that the plaintiff was stopping for a squad car going to a motor vehicle accident involving a personal injury."

Some further factual background might tend to explain Tope's presence at the intersection of Sixth Street and highway 75. Bean had testified he did not stop at the accident scene involved in the present lawsuit but proceeded to the personal injury accident at Thirty-second and highway 75 north. However, Bean did notify the sta-

tion by radio of an accident at the intersection of Sixth and highway 75. Tope was dispatched to this scene.

Tope's report contains the following description of the accident:

"# 1 and # 2 were going south in the 600 blk of Plymouth St. and the driver of # 1 was stopping for a squad car going to a 10–50 PI____ # 2 struck # 1 in the rear. Both cars were moved before I arrived."

Since Rush's action against the City was not brought within three months after the collision causing plaintiff's alleged injuries, the sufficiency of the foregoing report of Tope is vital to plaintiff's action.

■ Plaintiff maintains notice given to Officer Tope as an employee of the City constituted substantial compliance with the requirements of section 613A.5. The City, on the other hand, insists the accident report does not fulfill the requirements of the statute.

■ We believe the City's position has merit. Notwithstanding the question of an authorized agency relationship, it appears compliance with section 613A.5 notice was not achieved. The applicable time limitations of this section " * * * are intended to provide a method for prompt communication of time, place and circumstances of injury to the municipality so investigation can be made while facts are fresh. * * * [citing authorities]. They are a qualification of the City's liability. * * * [citing authority]. Substantial compliance with the terms of the statute is required. *Vermeer v. Sneller*, 190 N.W.2d 389, 394 (Iowa 1971)." *Norland v. Mason City*, 199 N.W.2d 316, 318 (Iowa 1972). See also *Goodwin v. City of Bloomfield*, 203 N.W.2d 582, 586 (Iowa 1973) and *Mihalovich v. Appanoose County*, 217 N.W.2d 564, 569 (Iowa 1974).

Given the most liberal construction the facts will bear, the City knew the date and place of an automobile collision between two private vehicles, one of which was stopped for a squad car on an emergency mission. The City points out this "notice" does not state whether plaintiff was injured. See *Goodwin v. City of Bloomfield*,

203 N.W.2d at 588. Perhaps more important, nothing indicates plaintiff is making any sort of claim at all. While section 613A.5 does not specifically so state, its obvious underlying purpose is to require claimants to inform municipalities of claims within a limited period of time. The statute speaks in terms of "notice stating the time, place, and circumstances thereof," i. e., of the "wrongful death, loss or injury." In support of this, see the above quotation from *Norland*. Any other interpretation would lead to absurd results and would seemingly negate legislative intent whenever there occurs a police investigated motor vehicle accident which may in some manner have been brought about by the city.

It is our conclusion the officer's accident report did not constitute substantial compliance with section 613A.5, The Code, 1971. See *Shearer v. Perry Community School District*, 236 N.W.2d 688, 693 (Iowa, filed December 17, 1975). There is no contention that any notice other than the one considered in this division was given the City.

We prefer to rest our determination of the issue dealt with in this division on the foregoing ground rather than on the question of defective pleading by plaintiff as urged by the City in written brief and argument.

■ III. As an alternative ground for reversal of the court's order dismissing his action against the City plaintiff maintains even if he did not substantially comply with the notice of claim provision of section 613A.5, the City's procurement of liability insurance waived this "limitation of actions bar." In other words, he argues the City waived the notice requirement under this statute by the purchase of liability insurance.

The City in response to this contention maintains no such allegation is contained in plaintiff's petition.

The record discloses the question of liability insurance first came to light when alleged in plaintiff's resistance to the City's motion to dismiss as to it. The matter of insurance was also referred to in the court's ruling sustaining the motion to dismiss.

However, there is no indication in this record plaintiff made any effort before hearing on the City's motion to dismiss to amend his petition to allege the existence of such insurance covering the City's liability as a reason for his failure to give notice of claim to the City within 60 days from the date of the accident or to institute the present action within three months.

█ A motion to dismiss is directed to the pleadings as they stand. Except those facts of which judicial notice may be taken, the pleadings cannot be aided by evidence when subjected to a motion to dismiss for failure to state a claim on which any relief can be granted. See *Osbekoff v. Mallory*, 188 N.W.2d 294, 297 (Iowa 1971), where this court declined to examine extraneous facts to support a petition when its sufficiency was questioned by defendant's motion.

The contention presents nothing for review.

The case is therefore affirmed on plaintiff's appeal from the dismissal of his petition against the City.

█ IV. Plaintiff maintains the trial court committed reversible error by allowing evidence of the previously mentioned settlement agreement between Rush and Warren to be admitted at trial.

The factual background giving rise to this contention has been set out earlier in this opinion and will not be repeated at this point.

The function of a motion in limine and the necessity of preservation of error alleged to have arisen in connection with such motion were discussed in *Twyford v. Weber*, 220 N.W.2d 919, 922–924 (Iowa 1974).

We appreciate plaintiff's counsel did not have the benefit of the decision in *Twyford* at the time of trial. Nevertheless, it is our view that decision controls plaintiff's contention as presently urged.

Since plaintiff did not preserve any alleged error the contention presents nothing for review.

V. Plaintiff asserts the trial court erred by *sua sponte* dismissing the complaint against Bonnie Warren arguing the court had no such power in the absence of statute. It is also contended the reference in the instructions to the negligence of Bonnie Warren "without some explanation to the jury and without giving the jury an opportunity to find negligence on the part of Bonnie Warren, is to say the least, confusing and tantamount to an instruction to the jury that Bonnie Warren was solely responsible for the damages and injuries to plaintiff."

█ A reading of the instructions does not bear out plaintiff's contentions. At the outset, the jury was allowed to find Bonnie Warren negligent in instructions 7, 8, 11, 12 and 14. As her negligence was pleaded by defendant Bean as a proximate cause of the accident, the instructions were not prejudicial.

█ In some situations it is well settled courts may *sua sponte* dismiss a case.

" * * *

"A motion for dismissal is not, * * * essential to the exercise of the court's power to order a dismissal. Where proper grounds for dismissal of the action exist, an action is subject to dismissal, as a general rule, on the court's own motion, as where the plaintiff refuses to amend his petition on a proper prosecution of his case. The court will on its own motion dismiss actions based on illegal contracts, or which offend public policy, notwithstanding the fact that the illegality is not pleaded." 24 Am. Jur.2d, Dismissal, Discontinuance, and Nonsuit, section 69, pages 60–61.

This court in *Motz v. Motz*, 207 N.W.2d 580, 581 (Iowa 1973), cited the foregoing section of American Jurisprudence, Second, stating: "Courts in other jurisdictions have held that trial courts do possess such power." The court did not decide the issue, however, since *Motz* was "not a case for the exercise of such power."

In any event, in several situations it appears to be generally recognized trial courts may *sua sponte* dismiss where the case has not been diligently prosecuted (see Rule 215.1, R.C.P.), *Cooper v. Odom*, 6 Ariz.App.

466, 433 P.2d 646, 649; *Krasner v. Verner Auto Supply, Inc.*, 130 Ga.App. 892, 204 S.E.2d 770, 772; *Zeis v. Fruehauf Corporation*, 56 Wis.2d 486, 202 N.W.2d 225, 227–228; where issues have become moot, *Myers v. Polk Miller Products Corp.*, 201 F.2d 373, 376, 40 C.C.P.A. 739, 376 (1953); *State v. Pitre*, 209 So.2d 764, 766–767 (La.1968); where the court discovers it lacks jurisdiction, *Burtchell v. Willey*, 147 Me. 339, 87 A.2d 658, 661; *Gerdel v. Gerdel*, 132 Vt. 58, 313 A.2d 8, 12.

In *Independent R. Co. v. Independent Milwaukee Brewery*, 220 Wis. 605, 265 N.W. 564, 566, it was found plaintiff was attempting to use the court "as an instrument of blackmail" and stated: " * * * The courts will not permit their use for any such purpose. As soon as it appears that an action is being prosecuted for any such purpose, a court should of its own motion dismiss the action. * * * [citing authorities]."

The *Motz* case held that " * * * if trial courts do possess inherent power to dismiss cases, they should exercise the power with restraint * * *." 207 N.W.2d at 581. (Emphasis supplied). See also *Birdo v. Rodriguez*, 84 N.M. 207, 501 P.2d 195, 198.

The more logical approach is to allow trial courts to exercise the power to *sua sponte* dismiss actions in a "restrained" manner. At the same time, an exhaustive list of factual circumstances justifying this type of judicial activity would be rather difficult to create. And, in any event, the issue here is whether the instant facts justified *sua sponte* dismissal. Research has revealed no cases dealing with similar facts.

■ In the agreement, plaintiff and his wife agreed to "release and forever discharge" Mr. and Mrs. Warren from liability due to the accident. It was also agreed the Rushes would satisfy any judgment of contribution or indemnity against Bonnie Warren by the other defendants. In a "clarification" the same parties agreed the action would not be dismissed against Bonnie Warren until settlement or final judicial disposition of plaintiff's claims against defendants Bean and the City. In return,

plaintiff agreed to make no effort to collect any judgment against Bonnie Warren.

Plaintiff's counsel explained at the beginning of the trial the main reason for retaining Mrs. Warren as a party was to insure her availability as a material witness. After discussion of the agreement, the trial court stated:

"It's the conclusion of the Court there is no issue between the plaintiff * * * and the defendant Bonnie J. Warren; so the petition, as far as it concerns the defendant Bonnie J. Warren, is dismissed." In effect, the trial judge concluded there was no "actual controversy" between plaintiff and Mrs. Warren, and thus, that the case was moot. See *Bailey v. Broderick*, 212 N.W.2d 395, 399 (Iowa 1973).

Expressed differently, plaintiff's case against Bonnie Warren was moot, because " * * * a judgment, if rendered, * * * [would have had] no practical legal effect upon the existing controversy. * * *." The issues between them had become "academic or nonexistent." See *Cooley v. Ensign-Bickford Company*, 209 N.W.2d 100, 102 (Iowa 1973).

It is the court's conclusion trial courts should have the power to *sua sponte* dismiss actions. Use of this power should be restrained. Under the facts before us, dismissal of the case against defendant Bonnie Warren did not constitute an abuse of discretion.

VI. The fourth issue plaintiff presents for review concerns the propriety of the trial court's instruction 15 dealing with the issue of plaintiff's contributory negligence. In particular it is contended there was insufficient evidence on the questions of lookout, control and failure to yield the right of way to an emergency vehicle to submit such issues to the jury. These specifications were pleaded by defendant Bean.

" * * * All issues which are pled and for which there is substantial support in the evidence must be submitted. It is error not to do so, just as it is error to submit those which do not conform to both these conditions. * * * [citing authorities]. The

specific question to be answered here is whether there was substantial evidence to support the alleged negligence. * * *." *Mora v. Savereid,* 222 N.W.2d 417, 419 (Iowa 1974).

"Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them a jury question is engendered. Citation of authority is unnecessary. Rule 344(f) 17, Rules of Civil Procedure." *Bradt v. Grell Construction, Inc.,* 161 N.W.2d 336, 340 (Iowa 1968).

"In determining whether a jury question was engendered the evidence is viewed in the light most favorable to the person having the burden of proof and if reasonable minds can differ on the issue it is for the jury. * * * [citing authorities]." *Nolte v. Case,* 221 N.W.2d 741, 743 (Iowa 1974).

▆ Review of the evidence in this manner reveals:

1. The streets were snowy and icy.

2. The squad cars' emergency lights were in operation.

3. The officers turned on their sirens which operated at least until the cars reached the intersection.

4. The Bean squad car was observed by plaintiff from the time plaintiff was in the middle of the block before the intersection. Plaintiff saw the emergency lights and heard the sirens.

5. Plaintiff slowed his vehicle and, at the last moment, suddenly stopped it.

It is from this state of the record that the determination must be made whether the trial court was justified in submitting instruction 15 to the jury. The first specification in this instruction concerns "lookout." And in this regard, "motorists in discharging their common law duty to exercise due care under the circumstances must keep a proper lookout. The term requires more than looking and seeing an object. It includes watchfulness of the movement of the driver's vehicle in relation to other things seen or seeable in the exercise of ordinary care. * * * [citing authorities]." *Nassif v. Pipkin,* 178 N.W.2d 334, 337 (Iowa 1970).

"The word lookout as used in connection with operation of a motor vehicle has no technical legal significance. Its meaning depends upon the context." *Bradt v. Grell Construction, Inc.,* 161 N.W.2d at 342. Expressed differently, " * * * the question as to its being a proper or sufficient lookout [is] determined by the particular surrounding circumstances as revealed by the evidence then under consideration." *Jesse v. Wemer & Wemer Co.,* 248 Iowa 1002, 1011, 82 N.W.2d 82, 86; *Duffy v. Harden,* 179 N.W.2d 496, 500 (Iowa 1970).

"The exercise of reasonable care under the circumstances required defendants to refrain from conduct reasonably likely to cause injury to others. * * * [citing authority]." *Bradt,* 161 N.W.2d at 342.

Application of the foregoing statements of the law dictates the conclusion reasonable minds could have found plaintiff did not exercise "ordinary care" in his "watchfulness of the movement of the driver's vehicle in relation to other things seen or seeable," and that such failure was a proximate cause of the collision. The exercise of proper lookout may have commanded plaintiff to begin his stop before he did. Submission of this issue did not constitute error.

Under these facts the issues of "control" and "lookout" are closely connected. " * * [U]sually it is necessary for the jury to consider them together." *Edwards v. State, Military Department,* 8 Or.App. 620, 494 P.2d 891, 895.

" * * * Control of an automobile connotes the ability to maneuver it with reasonable promptness so as to guide it in the manner willed by the operator acting as an ordinarily careful and prudent person would under the circumstances, including such control as will enable the operator to bring it to a stop with a reasonable degree of celerity." *Schaben v. Kohles,* 186 N.W.2d 598, 600 (Iowa 1971).

2 Blashfield, Automobile Law and Practice (Third Ed.), section 105.9, pages 322–323, has this statement:

"The operator of a motor vehicle is required to keep it under such control as a

reasonably prudent driver would under the same conditions. A requirement as to having the automobile 'under control' must be interpreted in the light of the circumstances surrounding a given situation. A driver has his automobile under control when he has the ability to guide and direct its course of movement, fix its speed, and bring it to a stop with a reasonable degree of celerity."

Under this state of the record, the finder of fact could have concluded plaintiff continued traveling at an unreasonable rate of speed for too long a time under the conditions which, in turn, prevented a safe stop. Thus, plaintiff's lack of control, coupled with his improper lookout, could have logically been found to have contributed to the occurrence of the collision.

The trial court was correct in submitting to the jury the issue of plaintiff's contributory negligence based upon lookout and control. However, in addition, the court submitted the question of plaintiff's failure to yield the right of way to an emergency vehicle being operated by Bean in the execution of his duty as a police officer for Sioux City. Plaintiff maintains this was error because since plaintiff's bread truck did not collide with the emergency vehicle he did in fact yield the right of way.

The court submitted the instructions in final form to counsel to enable them to make objections thereto before reading the instructions to the jury.

At that time plaintiff objected " * * * to the giving of Instruction No. 15 for the reason that there is no evidence on which to submit the issue of contributory negligence of the plaintiff to the jury."

In determining the merits of assignment of error relating to an instruction we consider only those objections made in accordance with the requirements of rule 196, R.C.P. *Wiles v. Myerly,* 210 N.W.2d 619, 630 (Iowa 1973); *State v. Baskin,* 220 N.W.2d 882, 886 (Iowa 1974); *Dickman v. Truck Transport, Inc.,* 224 N.W.2d 459, 465 (Iowa 1974).

This statement appears in *Baskin,* 220 N.W.2d at 886:

"In one way or another this court has frequently said an objection to an instruction given to a jury should reveal to the trial judge the purported defect to which the objecting party makes complaint and may wish to make the subject matter of attack upon appeal. The objection should be as specific and as penetrating as the stress of the trial permits. The purpose of requiring clarity of objections is not to gratify any possible whim of the trial judge, but to afford the trial judge an opportunity to catch exactly what is in counsel's mind and thereby determine whether the objection possesses merit to an extent the instruction should be recast. In short, a party, upon objecting, must make known to the trial judge the specific objection which he may wish to urge upon appeal. If his objection then taken possesses merit and induces the trial judge to recast his words, a subsequent appeal is avoided. But if he does not disclose what is then in his mind, a needless appeal may be the ultimate result."

In light of the foregoing principles plaintiff's objection preserved nothing for review in regard to the court's submission of the issue of failure to yield the right of way.

This assignment is without merit.

VII. The remaining issue for review concerns the court's instructions, particularly as they relate to the operation of the police squad car by Bean.

Plaintiff maintains this issue involves three sub-issues which he states in this manner: (1) Was Robert Bean at the time and place in question · on an authorized emergency mission so as to be exempt from ordinary traffic regulations?; (2) If Robert Bean was on an authorized emergency mission, was he additionally required to use lights and/or siren in order to be exempt from ordinary traffic regulations?; and (3) In the event Robert Bean was engaged in an authorized emergency mission and was using lights and/or siren at the time and place in question, did he slow down as necessary for safety and proceed cautiously

past the stop sign as required by statute or was he guilty of reckless disregard of the safety of others in violation of city ordinance?

In regard to the first "sub-issue" it is pointed out plaintiff had alleged as one of several specifications of negligence relied on as a proximate cause of plaintiff's injuries and damages that defendant had failed to stop in obedience to an official traffic-control device in violation of section 321.-256, The Code. This statute provides in part:

"*Obedience to official traffic-control devices.* No driver of a vehicle * * * shall disobey the instructions of any official traffic-control device placed in accordance with the provisions of this chapter, unless at the time otherwise directed by a police officer."

■ Of course, violation, without legal excuse, of this statutory law of the road would constitute negligence per se. *Dickman v. Truck Transport, Inc.,* 224 N.W.2d 459, 463 (Iowa 1974). Defendant in answer had alleged he was operating his vehicle as an emergency vehicle as a police officer of Sioux City at the time and place in question and was therefore not required by law to stop at the stop sign regulating traffic for eastbound vehicles on Sixth Street.

■ Thus, under the issues presented by the pleadings, the question whether Bean was on an emergency assignment at the time of the incident is in the lawsuit. Whether a jury question was engendered on this issue is the problem.

Plaintiff insists a fact question had been generated for determination by the jury under proper instruction whether Officer Bean was on an authorized emergency mission at the time in question. Rush maintains this fact question stems from an inconsistency between a deposition given by Bean and the officer's testimony at trial.

The record discloses that at the deposition proceeding Bean was asked, "Were you on an assignment at the time that you observed this collision?" Bean answered, "No, Sir." This portion of the deposition was read into evidence as a part of plaintiff's case in chief. No objection was urged by defendant. When called as a witness at trial Bean testified he was responding to a personal injury accident at Thirty-second and highway 75 north having been dispatched by radio. On cross-examination plaintiff called Bean's attention to his deposition in this fashion: "Q. Officer Bean, do you recall my asking you, at that time, at page 15, line 20, 'Were you on an assignment at the time that you observed this collision?' A. No, I don't recall that. No." On redirect examination Bean testified that if the answer referred to by plaintiff appeared in the transcript it was inaccurate according to Bean's recollection. Plaintiff did not pursue the matter further.

When plaintiff's counsel was afforded opportunity to object to the court's instructions he stated: " * * * [T]he jury is not, under these instructions, given an opportunity to determine whether the police car being operated by the defendant Robert Bean was, at the time and place of this accident, an authorized emergency vehicle operating under instructions for an assignment, and that there is a conflict in the evidence as to whether the defendant was, in fact, on assignment."

Plaintiff alleged in the third paragraph of his motion for new trial the court had erred in instructing the jury as a matter of law over objections and exceptions defendant Bean at the time and place in question was on an emergency mission and entitled to privileges accorded an authorized emergency vehicle when the evidence indicated this was a question of fact for the jury to decide.

In ruling on this ground of plaintiff's motion the court stated: " * * * [P]laintiff failed to make proper request that this be included in Instruction 16."

■ Contrary to the court's opinion, the matter now urged by plaintiff was sufficiently brought to the trial court's attention to preserve any alleged error in this court. It was not necessary that his request be added to or form a part of any particular instruction proposed by the court.

■ It is true a jury question is engendered even where facts are not disputed or contradicted if reasonable minds might draw different inferences from them. *Ruby v. Easton*, 207 N.W.2d 10, 15 (Iowa 1973); *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 642 (Iowa 1969).

The problem is whether this record constitutes such a contradiction or dispute that the question whether Bean was on an authorized emergency mission so as to be exempt from ordinary traffic regulations at the time of the incident required submission to the jury or if not sufficient as a contradiction does the record present facts which would permit reasonable minds to draw different inferences as to the issue involved.

*City of Des Moines v. Huff*, 232 N.W.2d 574, 578–579 (Iowa 1975), tells us: " * * * An 'emergency call' exists when, upon receipt of a message, the responding officer truly believes an emergency exists and has reasonable grounds for that belief. In the ordinary case, this issue is for the trier of fact. * * * [citing authorities]." See also *Pieper v. Harmeyer*, 235 N.W.2d 122, 131 (Iowa 1975).

■ In considering whether there is evidentiary support for an instruction on pleaded specifications of negligence this court gives the evidence the most favorable construction it will reasonably bear. *Bradt v. Grell Construction, Inc.*, 161 N.W.2d 336, 340 (Iowa 1968).

When the conflicting evidence and the inferences to be drawn therefrom are considered in light of this statement we conclude the issue whether Bean was on an emergency assignment should have been submitted to the jury under proper instructions.

The trial court's failure to do so requires reversal.

■ In support of the contention urged in "sub-issue" 3 plaintiff insists the trial court should have submitted to the jury under proper instructions the question whether Bean slowed down as necessary for safety and proceeded cautiously past the stop sign or whether Bean was guilty of reckless disregard of the safety of others at the time and place in question.

The court told the jury in instruction 10: "The laws of Iowa provide that the driver of any authorized emergency vehicle when responding to an emergency call upon approaching a stop sign shall slow down as necessary for safety but may proceed cautiously past such stop sign.

"A failure by defendant to comply with this provision of law constitutes negligence."

As we understand from plaintiff's requested instructions 4, 5 and 7 as well as his motion for new trial, his complaint is based on the court's failure to add to an instruction or as a separate instruction the phrase, "if you find that the defendant operated his vehicle with reckless disregard of the safety of others, this constitutes negligence." The question of lookout and control were covered in other instructions.

In our opinion the instructions when read as a whole fairly submitted the issues to the jury. After consideration of every contention urged by plaintiff in support of this issue we conclude plaintiff's contention in this respect is without merit.

VIII. Plaintiff had alleged in subparagraph (j) of paragraph 4 of division 3 of his petition Bean's negligence in failing to sound the siren on the squad car in violation of section 10.12.070(4)(b) of the Sioux City ordinance was also a proximate cause of the collision.

This section of the ordinance is set out in Bean's answer. It was stipulated at pretrial conference the court would take judicial notice of the municipal ordinance as cited in the pleadings.

The specific sub-section involved provides:

"(b) Those exemptions hereinbefore granted in reference to the movement of an authorized emergency vehicle shall apply only when the driver of said vehicle sounds a siren, bell, or exhaust whistle as may be reasonably necessary, and the vehicle displays a lighted red lamp visible from the front as a warning to others."

In discussing the preliminary draft of the instructions with counsel the court stated it had considered defendant's request that the instruction regarding the municipal ordinance of Sioux City be deleted and concluded, "it should be deleted, and will so do." The right of counsel to object to the final draft was reserved to counsel.

In the final draft of its instructions the court made no reference to a requirement that a siren be sounded in order to exempt Bean from ordinary traffic regulations and allow him to go through the stop sign into the intersection in front of the vehicle operated by Rush. The trial court failed to disclose any reason for its refusal in this respect.

Bean, in seeking to uphold the trial court's failure to make reference to section 10.12.070 of the municipal code, asserts the trial court ultimately determined the ordinance was in conflict with the statutes of Iowa and therefore refused to instruct on the ordinance. He points out sections 321.-235 and 321.236, The Code, specifically state that a local authority has no power to enact or enforce any rule or regulation which might be in conflict with the specific provisions of chapter 321, The Code, and any ordinance which might be inconsistent with that chapter is invalid and of no force or effect.

The issue to be determined, then, is whether the Sioux City ordinance conflicts with the various sections of chapter 321, The Code, 1966, pertaining to emergency vehicles and equipment.

Section 321.231 provides:

"*Emergency vehicles.* The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal."

■ This statute which accords an authorized emergency vehicle when responding to an emergency call the right to proceed cautiously past such red or stop sign or signal provides an exception to the provisions of section 321.256 set out earlier. The preferential status granted an emergency vehicle does not relieve the driver thereof from the duty of having due regard for the safety of other people lawfully using the street or highway. Hence, notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way is necessary in order to fix the obligation imposed by law to give precedence to the emergency vehicle. In support see *Wetz v. Thorpe,* 215 N.W.2d 350, 353–354 (Iowa 1974) and authorities cited.

In recognition of this essential right of notice to the person required to yield the legislature enacted as a part of our law of the road section 321.433 which provides in pertinent part:

"*Sirens and bells prohibited.* * * * Any authorized emergency vehicle may be equipped with a siren * * *, but such siren shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which said latter events the driver of such vehicle shall sound said siren when necessary to warn pedestrians and other drivers of the approach thereof."

■ In our opinion the legislative purpose and intent in including in section 321.-433 the requirement that an authorized emergency vehicle when operated in response to an emergency call sound the vehicle's siren "when necessary to warn pedestrians and other drivers of the approach thereof" was to protect against injury and damages to all persons then on, entering or in proximity to the traveled highway. *Wetz v. Thorpe,* 215 N.W.2d at 353–354.

Another exception from the provisions of section 321.256 is provided by section 321.-324 which gives an authorized emergency vehicle with red lights flashing or audible signal sounding the immediate right of way when operating in response to an emergency call. The pertinent part of section 321.-

324 is quoted in *Wetz v. Thorpe,* 215 N.W.2d at 353 and will not be repeated at this point.

In our opinion this section also articulates a legislative intent to protect the public lawfully using the street or highway by requiring notice and warning to those required to yield.

Sections 321.231, 321.433 and 321.324, The Code, 1966, deal with the operation of authorized emergency vehicles when responding to an emergency call.

 When statutes relate to the same subject matter or to closely allied subjects they are said to be pari materia and must be construed, considered and examined in the light of their common purpose and intent so as to produce a harmonious system or body of legislation. *Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co.,* 165 N.W.2d 771, 774–775 (Iowa 1969); *Wonder Life Company v. Liddy,* 207 N.W.2d 27, 32–33 (Iowa 1973); *Iowa Water Pollution Con. Com'n. v. Town of Paton,* 207 N.W.2d 755, 763 (Iowa 1973); and authorities cited in these decisions.

 Notice and warning to those required to yield is no less essential when an emergency vehicle is about to proceed through a stop sign than in any other situation. Thus, section 321.231 must be read in connection with sections 321.433 and 321.-324. When this is done, it becomes evident the ordinance, by requiring the sounding of a siren "as may be reasonably necessary" is not in conflict with the statutory requirement such be sounded "when necessary to warn pedestrians and other drivers of the approach * * *" of the emergency vehicle.

Defendant's effort to support the trial court's refusal to submit the question of Bean's failure to sound the siren on the squad car as a specification of defendant's negligence cannot be sustained on the theory a conflict existed between the statutes and ordinance in this respect.

In framing the issues he desired to present by the pleadings plaintiff had alleged only that Bean had failed to sound the siren on the squad car as a particular of negligence relied on in seeking relief as against Bean. Plaintiff thus has no basis under this record to complain of the court's failure to submit to the jury as a specification of negligence the question whether Bean failed to display a lighted red lamp visible from the front of the squad car. However, in view of the necessity of a remand of this case for a new trial by reason of the trial court's error pointed out in division VII of this opinion the question of any conflict between the provisions of the ordinance directing "and the vehicle display a lighted red lamp visible from the front as warning to others" and the statutory provisions governing operation of authorized emergency vehicles should be considered.

In this connection it is pointed out section 321.324, The Code, 1966, provides for either a display of " * * * a red light or flashing red light from directly in front thereof, *or* * * * [the] giving [of an] audible signal by siren, exhaust whistle, or bell. * * *." (Emphasis supplied).

Section 10.12.070(b) of the ordinance requires *both* a siren and a flashing red light whereas the statute provides for either but does not require both. The question is whether this difference constitutes a conflict rendering the ordinance invalid.

 A municipal ordinance cannot be allowed to change a statutory provision either by enlargement or diminution. *City of Vinton v. Engledow,* 258 Iowa 861, 866, 140 N.W.2d 857, 861. See also *Central City v. Eddy,* 173 N.W.2d 582 (Iowa 1970).

Use of the conjunctive "and" rather than "or" in the ordinance necessarily mandates more comprehensive requirements in the way of notice and warning of the approach of an authorized emergency vehicle when responding to emergency calls than do Code provisions regulating the operation of emergency vehicles under similar circumstances. The ordinance thus conflicts with statutory provisions. This conflict renders the ordinance invalid. See *City of Vinton v. Engledow,* supra.

Since the cardinal principle of statutory construction is to save and not to destroy, the problem is whether the provision of the ordinance requiring display of a lighted red lamp is capable of separation in fact from the clause requiring the sounding of a siren without destroying the legislative intent and purpose of the ordinance. The question of separability was dealt with by this court at some length in *State v. Blyth,* 226 N.W.2d 250, 261–263 (Iowa 1975). In light of the principles stated in that opinion and the authorities cited in support thereof this court now holds the provision of the ordinance following "and" which requires display of a lighted red lamp is severable from the remaining provision of section 10.12.-070(b).

The striking of the phrase "and the vehicle displays a lighted red lamp visible from the front as a warning to others" would not destroy the "paramount intent or chief purpose" of the ordinance. So modified, subparagraph (b) of section 10.12.070 would still fulfill "the apparent legislative intent" and would likewise remain capable of execution.

Since the main purpose of the ordinance is still preserved after removal of the offending words, the most reasonable course of action is to sever. Therefore, we strike the offending phrase "and the vehicle displays a lighted red lamp visible from the front as a warning to others" from this subparagraph. Thus truncated, subparagraph (b) of this section of the ordinance is valid insofar as challenged in this appeal.

The question remains whether a jury question was generated on the issue of Bean's alleged failure to sound his siren at the time and place in question.

██ Plaintiff contends a fact question was generated in regard to the specification of negligence urged by him relative to Bean's alleged failure to sound the siren on the squad car at the time and place of the incident in violation of section 10.12.070(b) and it was error for the trial court to refuse to submit the issue to the jury.

As stated, Richard W. Carpenter, a construction worker present in the area at the time of the incident, and Mrs. Warren, driver of the Volkswagen, both testified at trial relative to operation of the siren on the squad car. Carpenter recalled hearing the siren as the police vehicle traveling on Sixth Street approached the intersection with highway 75. Under his version the siren quit when the squad car crossed the railroad track from three-fourths to a block from the intersection.

Mrs. Warren heard the siren for the first time when the police vehicle was turning the corner in front of the bread truck. Other parts of her testimony concerning the operation of the siren are somewhat confused.

Bean's testimony at trial regarding his operation of the squad car's siren has been set out earlier. Plaintiff's version of the incident as it related to the operation of the siren has also been previously narrated and reference made to plaintiff's contradictory statements.

The problem presented at this point is the same as the one presented in division VII of this opinion where we considered whether a jury issue was engendered on the question whether Bean was on an emergency assignment at the time of the incident. What we said in resolving that question is well adapted to a determination of whether a jury issue is raised in regard to the operation of the siren on defendant's emergency vehicle at the time and place of the incident.

In light of the authorities considered there we conclude the issue whether Bean was operating a siren on the emergency vehicle at the time in question should have been submitted to the jury under proper instructions.

We do not agree with the trial court that this matter was not sufficiently called to its attention at the trial stage. The trial court was in error in refusing to submit the issue.

IX. There is no basis for plaintiff's complaint of irregularity alleged to have occurred in connection with the preliminary

draft of the instructions. See rule 196, R.C.P., as then in force.

This court has previously determined there was no error in the dismissal of plaintiff's petition against the municipal corporation or in the court's ruling dismissing his action as against Warren.

However, the trial court did err in refusing to submit to the jury those issues considered in divisions VII and VIII. The trial court is therefore directed to set aside its order denying Rush's motion for a new trial insofar as it relates to plaintiff's claim for relief against Bean only and to grant a new trial on that division of plaintiff's petition.

The case is therefore—Affirmed in part, reversed in part and remanded for new trial.

All Justices concur except RAWLINGS, J., who takes no part.